STATE OF CONNECTICUT *v.* PATRICK D. SMITH
(11693)

PETERS, C. J., HEALEY, SHEA, SANTANIELLO and CALLAHAN, JS.

Argued March 12—decision released July 15, 1986

*Suzanne Zitser,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*James G. Clark,* deputy assistant state's attorney, with whom, on the brief, was *John T. Redway,* state's attorney, for the appellee (state).

CALLAHAN, J. The defendant was charged in an information with robbery in the first degree in violation of General Statutes (Rev. to 1979) § 53a-134[1] and sexual assault in the first degree in violation of General Statutes (Rev. to 1979) § 53a-70.[2] The charges arose out of the robbery and sexual assault of the part owner and general manager of a health foods store in Middletown at about 6:30 p.m. on February 8, 1980. The defendant was tried by a jury and found guilty of both counts of the information. The trial court sentenced him to consecutive terms of not less than ten years nor more than twenty years on each count for a total effective sentence of not less than twenty years nor more than forty years.

The defendant has appealed claiming that the trial court erred: (1) by allowing an unnecessarily suggestive in-court identification procedure; (2) by denying

[1] "[General Statutes (Rev. to 1979)] Sec. 53a-134. ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime; or (2) is armed with a deadly weapon; or (3) uses or threatens the use of a dangerous instrument; or (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime.

"(b) Robbery in the first degree is a class B felony."

[2] "[General Statutes (Rev. to 1979)] Sec. 53a-70. SEXUAL ASSAULT IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or (2) by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person.

"(b) Sexual assault in the first degree is a class B felony."

the defendant a continuance during the trial; and (3) by failing to suppress the defendant's confession. We find no error.

The defendant does not dispute the sufficiency of the evidence to sustain his conviction. A brief recitation of the facts concerning the incident which the jury could reasonably have found, however, is necessary to place his claims in proper perspective. The victim was alone in her store when a partially masked white male entered, brandishing a large knife. Once inside the store he forced the victim down behind the counter and demanded the contents of the cash register and her pocketbook. He then took her outside, around the corner of the building where he made her remove her slacks and underwear and sexually molested her. After a period of time, having been frightened by a car pulling into a nearby parking area, he released the victim and fled. The Middletown police were called to the scene and the victim subsequently went to Middletown police headquarters where she gave a statement as to what had transpired.

I

The defendant's first claim is that he was denied due process of law because the trial court allowed an unnecessarily suggestive and unreliable in-court identification procedure.

On the evening of the robbery, the victim gave the police a description of her assailant which was somewhat limited because his face was partially covered during the incident. On February 26, 1980, however, she selected the defendant's picture from an array containing six photographs. At that time she "felt" she recognized the defendant as her assailant because of his eyes, his eyebrows and the shape of his head. She was, however, not certain of her identification. The defendant

makes no claim that the photographic identification procedure at which the victim selected his picture was unnecessarily suggestive.

At trial, on direct examination, after the victim had testified concerning her selection of the defendant's photograph from the array, the state's attorney asked her if she would now be able to recognize her assailant. She replied that she would. The state's attorney then requested that the defendant stand, approach the witness and speak. Defense counsel objected to this procedure. The trial court overruled the objection and required the defendant to walk to the area of the witness stand and to recite his name, address and the alphabet.

The defendant contends that the procedure employed was unnecessarily suggestive, was conducive to misidentification, and deprived him of due process of law, despite the absence of an unnecessarily suggestive out-of-court pretrial identification procedure. The defendant does not claim that all in-court identification procedures are unnecessarily suggestive. Particularly, he does not claim that what he characterizes as the "customary" identification of an accused seated at counsel table is unnecessarily suggestive. He also conceded during argument in the trial court that he could be required to stand to be identified. The defendant argues rather that the circumstances of this in-court identification, wherein he was required to approach the victim and speak, were unnecessarily suggestive and conducive to misidentification.

We fail to see how the identification procedure employed in this case has a greater tendency to suggestiveness than the identification of an accused seated or standing at counsel table. Any one-on-one in-court identification of an accused conveys the message that the state has arrested and placed on trial a person it

believes has committed the crime. *Baker* v. *Hocker,* 496 F.2d 615, 617 (9th Cir. 1974). That is the factor that creates the element of suggestiveness, not the extra steps taken here to allow the victim to observe the defendant thoroughly before identifying him.

The United States Supreme Court has set standards as to when a pretrial identification must be excluded and under what circumstances an in-court identification that follows an impermissible pretrial identification must be excluded. See *Neil* v. *Biggers,* 409 U.S. 188, 200–201, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972); *Coleman* v. *Alabama,* 399 U.S. 1, 5–6, 90 S. Ct. 1999, 26 L. Ed. 2d 387 (1970); *Foster* v. *California,* 394 U.S. 440, 442, 89 S. Ct. 1127, 22 L. Ed. 2d 402 (1969); *Simmons* v. *United States,* 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968); *Stovall* v. *Denno,* 388 U.S. 293, 297, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967); *Gilbert* v. *California,* 388 U.S. 263, 272, 87 S. Ct. 1951, 18 L. Ed. 2d 1178 (1967); *United States* v. *Wade,* 388 U.S. 218, 241, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967). The court, however, has not set any guidelines for in-court identification procedures or indicated that in-court identifications must be made in a way that is not suggestive. *United States* v. *Domina,* 784 F.2d 1361, 1368 (9th Cir. 1986). Generally, an in-court testimonial identification need be excluded, as violative of due process, only when it is tainted by an out-of-court identification procedure which is unnecessarily suggestive and conducive to irreparable misidentification. *United States* v. *Domina,* supra, 1368; *State* v. *Nelson,* 4 Conn. App. 514, 516, 495 A.2d 298 (1985); *Fortune* v. *State,* 549 P.2d 380, 383 (Okla. Crim. App. 1976). "The Supreme Court has not extended its exclusionary rule to in-court identification procedures that are suggestive because of the trial setting." *United States* v. *Domina,* supra, 1369. "There is no constitutional requirement that an in-court identification confronta-

tion be conducted as a lineup or be otherwise free of suggestion. An in-court testimonial identification must be excluded if it is the product of an out-of-court confrontation arranged by the state, which was unnecessarily suggestive and conducive to irreparable misidentification." *Commonwealth* v. *Wheeler,* 3 Mass. App. 387, 391, 331 N.E.2d 815 (1975). "[W]ithout more, the mere exposure of the accused to a witness in the suggestive setting of a criminal trial does not amount to the sort of impermissible confrontation with which the due process clause is concerned." *Middletown* v. *United States,* 401 A.2d 109, 132 (D.C. App. 1979).

"We know of no authority which would prohibit, as unduly suggestive, an exclusively in-court identification. *Mangrum* v. *State,* 155 Ga. App. 334, 335, 270 S.E.2d 874 (1980)." *State* v. *Nelson,* supra, 516. The defendant's protection against the obvious suggestiveness in any courtroom identification confrontation is his right to cross-examination. *Laury* v. *State,* 260 A.2d 907, 909 (Del. 1969); *State* v. *Drew,* 360 So. 2d 500, 516 (La. 1978); *Cooper* v. *State,* 599 P.2d 419, 422 (Okla. Crim. App. 1979); see *Manson* v. *Brathwaite,* 432 U.S. 98, 113 n.14, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977). The innate weakness in any in-court testimonial identification is grounds for assailing its weight rather than its admissibility. *In re W.K.,* 323 A.2d 442, 444 (D.C. App. 1974).

The manner in which in-court identifications are conducted is not of constitutional magnitude but rests within the sound discretion of the trial court. *United States* v. *Satterfield,* 572 F.2d 687, 690 (9th Cir. 1978); *United States* v. *Williams,* 436 F.2d 1166, 1168 (9th Cir. 1970); *United States* v. *King,* 433 F.2d 937, 938 (9th Cir. 1970); *People* v. *Powell,* 105 App. Div. 2d 712, 714, 481 N.Y.S.2d 157 (1984); see *United States* v. *Williams,* 704 F.2d 315, 319 (6th Cir. 1983). In requir-

ing the defendant to approach the witness stand and speak, the trial court enabled the jury to evaluate for itself the certainty of the victim's identification. See *State* v. *Jonas,* 169 Conn. 566, 576–77, 363 A.2d 1378 (1975), cert. denied, 424 U.S. 923, 96 S. Ct. 1132, 47 L. Ed. 2d 331 (1976). The defendant's voice and appearance were probative evidence and the trial court did not abuse its discretion or violate the defendant's due process rights in granting the state's request.

## II

The defendant next claims that the trial court erred by refusing to grant his request for a continuance in order to arrange a less suggestive in-court identification procedure. The short answer to the defendant's claim is that the record does not disclose that such a request was ever made. The record does reveal that the defendant objected to the identification procedure. His principal concern, however, was whether being required to speak was a violation of his fifth amendment rights and whether the state had followed proper procedures for obtaining nontestimonial evidence under the rules of practice. He was also concerned that the victim's photographic identification of the defendant might later prove to be unnecessarily suggestive and taint her in-court identification. His request for a continuance appears to have been to allow him time to research those issues further. The trial court, however, had already recessed for almost two hours for that very purpose.

Although a trial court's denial of a request for an alternative in-court identification procedure may be reviewed for an abuse of discretion; *United States* v. *Brown,* 699 F.2d 585, 593 (2d Cir. 1983); *People* v. *Powell,* supra, 715; there is no constitutional mandate requiring alternative in-court identification procedures. *United States* v. *Domina,* supra, 1369; *Commonwealth*

v. *Dickerson,* 372 Mass. 783, 790, 364 N.E.2d 1052 (1977); *Commonwealth* v. *Jones,* 362 Mass. 497, 501, 287 N.E.2d 599 (1972); *Commonwealth* v. *Ceria,* 13 Mass. App. 230, 237, 431 N.E.2d 608 (1982). The disposition of any motion requesting alternative identification procedures lies within the sound discretion of the trial court; *United States* v. *Domina,* supra, 1369; *United States* v. *Satterfield,* supra, 689-90; *Commonwealth* v. *Jones,* supra, 501; and the decision to grant or deny a continuance lies within the sound discretion of the trial court. *State* v. *McKnight,* 191 Conn. 564, 576-77, 469 A.2d 397 (1983). Absent a clear request for a continuance to arrange a less suggestive identification procedure, we are hardly in a position to say that the trial court abused its discretion by failing to grant one.

### III

Finally, the defendant argues that the trial court erred in several respects by failing to suppress his confession. The defendant's confession concerning the robbery and sexual assault of the victim was made to Officer Catherine Reinholtz of the Middletown police department on February 29, 1980, in the cell area of the geographical area number nine courthouse in Middletown. The record reveals that on February 21, 1980, the defendant had been arrested for another incident, a robbery, which had taken place that same day in the parking lot of Pelton's drug store in Middletown and that Reinholtz first spoke to him on February 22, at Middletown police headquarters, while he was waiting to be transported to court for arraignment on that charge. At that time the defendant told her that he would tell her everything she wanted to know if she could guarantee him psychiatric help. Reinholtz informed the defendant that she could not guarantee or promise him anything but would note his desire in her report. At a pretrial suppression hearing Reinholtz

testified that she spoke to the defendant for only about ten minutes on that occasion and did not question him concerning either the drug store parking lot robbery or the robbery and assault at the health foods store. The defendant concluded that conversation by telling Reinholtz that he would "think about it" and possibly give her a statement in the future.

On February 22, 1980, the defendant was arraigned in court in geographical area number nine and a public defender, Patrick Culligan, was appointed to represent him for the robbery of February 21, 1980. After being in custody for a week in lieu of bond on that charge, the defendant, on February 29, was returned to court for a hearing on a motion to dismiss filed by his court-appointed attorney. The defendant was not, at that time, arrested for, or charged with, the February 8, 1980 robbery and sexual assault.

While the defendant was at the courthouse on February 29, he was seen by his girlfriend Elaine Shackett and her friend Rosanne Abate. Later that day Shackett and Abate went to Middletown police headquarters where Shackett told Reinholtz that she thought the defendant was involved in sexual assaults and that he needed help. Reinholtz then arranged with the court officer at geographical area number nine to allow Shackett and Abate to visit with the defendant in the cell block and she accompanied them to the courthouse. The trial court found that her principal purpose in doing so was to obtain a statement.

When the three women arrived at the courthouse Shackett and Abate went into the cell block and spoke with the defendant, while Reinholtz waited in an outer room. The three conversed for about an hour during which time, Shackett testified, she tried to get the defendant to confess to anything he had done with the hope that he would get psychiatric help. The trial court

found, however, that "Miss Shackett was not an agent acting in behalf of the police, that Miss Shackett was a volunteer who thought it was to the best interest of Mr. Smith that he make a clean breast of whatever he had been involved in." There is ample evidence to support that finding.

Approximately one hour after Shackett and Abate began speaking to the defendant, attorney Culligan, the public defender, came into the cell area. The defendant requested to speak to him but Culligan told him he was busy on a long distance phone call concerning another prisoner and that he would have to talk to him later and left. Abate also left at that point. Reinholtz heard the defendant's request and Culligan's response. She testified, however, that at that time she did not know that Culligan represented the defendant.

About ten minutes after Culligan left the cell block Shackett, who was sitting directly opposite the defendant on the other side of the bars, called Reinholtz into the men's cell area and said that the defendant would talk to her now. Reinholtz went to the defendant's cell and asked him if he wished to speak to her and the defendant responded in the affirmative. Reinholtz then read the defendant his *Miranda* rights and the waivers concerning those rights, and asked the defendant if he understood both his rights and the waivers, and the defendant indicated that he did. Before Reinholtz could obtain his signature on a waiver form, however, the defendant commenced giving her a statement in which he confessed to the robbery and sexual assault of the victim at the health foods store on February 8, 1980. The defendant's statement was interrupted some fifteen minutes after it had begun by Culligan's return to the cell area and his demand that it cease.

At the conclusion of the hearing on the defendant's motion to suppress his confession, the trial court

found, in addition to the findings noted previously, that Reinholtz did not make any promises or guarantees to either Shackett or the defendant and that the reason the defendant confessed "was that he was angry with his lawyer" and that he wanted to get the assault on the victim "off his chest." The trial court also found that "at one point in the testimony [the defendant said] that he was ready to confess to anything so that he could satisfy his girlfriend who was begging him to confess but whatever confession [the defendant] made was not a confession which had been unduly forced upon him by anything that Ms. Reinholtz or anybody in the Middletown Police Department had done." There is no support in the record for the defendant ever having made that statement; however, it is obvious that Shackett did urge him to confess. The trial court concluded that Reinholtz had informed the defendant of his *Miranda* rights, that the defendant was an experienced criminal who knew his rights and police and court procedures, and that he voluntarily and knowingly had waived his rights. The trial court denied the defendant's motion to suppress his confession.

The defendant claims on appeal that his confession was not voluntary because it was coerced by Shackett's conduct in urging him to confess, coupled with Reinholtz's conduct, apparently in giving Shackett that opportunity and being available to take advantage of it. The defendant concedes in his brief that this claim was not raised in the trial court. He argues, however, that it should be considered on appeal because the record adequately supports a claim that he has been deprived of a fundamental constitutional right and a fair trial. *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973). We agree that the claim should be reviewed.

It is well settled that the use of an involuntary confession at trial constitutes a denial of due process. *Brown* v. *Allen*, 344 U.S. 443, 475, 73 S. Ct. 397, 97

L. Ed. 469 (1953). Because of the untrustworthy evidentiary value of an involuntary confession, it may not be used either as direct evidence or for impeachment purposes. *Mincey* v. *Arizona,* 437 U.S. 385, 398, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978). A confession which is coerced violates due process and should be excluded whether it results from pressure exerted by a police officer or a private individual. *People* v. *Whitt,* 36 Cal. 3d 724, 746, 685 P.2d 1161, 205 Cal. Rptr. 810 (1984); *People* v. *Haydel,* 12 Cal. 3d 190, 197, 524 P.2d 866, 115 Cal. Rptr. 394 (1974); *Kwiatkoski* v. *People,* 706 P.2d 407, 408 (Colo. 1985); *Commonwealth* v. *Allen,* 395 Mass. 448, 455–56, 480 N.E.2d 630 (1985); *Commonwealth* v. *Mahnke,* 368 Mass. 662, 679–80, 335 N.E.2d 660 (1975); *Cleveland Heights* v. *Stross,* 10 Ohio App. 3d 246, 249–50, 461 N.E.2d 935 (1983) (Parrino, P.J., dissenting on other grounds). "We are persuaded that it should make no difference whether an involuntary statement is coerced by a police officer or a private citizen. This approach has been followed in a number of other jurisdictions. *State* v. *Kelly,* 61 N.J. 283, 294 A.2d 41 (1972); *State* v. *Hess,* 9 Ariz. App. 29, 449 P.2d 46 (1969); *Schaumberg* v. *State,* 83 Nev. 372, 432 P.2d 500 (1967); *People* v. *Frank,* 52 Misc. 2d 266, 275 N.Y.S.2d 570 (1966); *State* v. *Ely,* 237 Or. 329, 390 P.2d 348 (1964); *People* v. *Berve,* 51 Cal. 2d 286, 293, 332 P.2d 97, 101 (1958)." *People* v. *Switzer,* 135 Mich. App. 779, 784, 355 N.W.2d 670 (1984). "[G]uarantees against self incrimination do not turn solely on whether interrogators are state agents. Rather, they prevent the state from using involuntary answers as evidence . . . whether obtained by government or private conduct." (Citations omitted.) *In re Deborah C.,* 30 Cal. 3d 125, 132, 635 P.2d 446, 177 Cal. Rptr. 852 (1981); see *United States* v. *Robinson,* 439 F.2d 553, 561 n.8 (D.C. Cir. 1970). The state argues that the due process clause only applies to state action and since the trial court, in effect,

found there was no state action in Shackett's allegedly coercing the defendant's confession, his due process rights could not have been violated. "State action enters the picture, however, when a trial court permits the prosecution at a jury trial to utilize as evidence of guilt a confession which is extracted under circumstances that so overbear the individual's will as to render the statement involuntary, that is 'not the product of a rational intellect and a free will.' *Townsend* v. *Sain,* 372 U.S. 293, 83 S. Ct. 745, 90 L. Ed. 2d 770 (1963)." *Hunter* v. *People,* 655 P.2d 374, 376 (Colo. 1982).

The state has the burden of proving the voluntariness of a confession by a preponderance of the evidence. *Lego* v. *Twomey,* 404 U.S. 477, 489, 92 S. Ct. 619, 30 L. Ed. 2d 618 (1972); *State* v. *DeForge,* 194 Conn. 392, 397, 480 A.2d 547 (1984); *State* v. *Stankowski,* 184 Conn. 121, 131, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981). In order to be voluntary a confession must be the product of an essentially free and unconstrained choice by the maker. *State* v. *Stankowski,* supra, 132; *State* v. *Staples,* 175 Conn. 398, 408, 399 A.2d 1269 (1978). "If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of the confession offends due process." *Culombe* v. *Connecticut,* 367 U.S. 568, 602, 81 S. Ct. 1860, 6 L. Ed. 2d 1037 (1961). The determination of whether a confession is voluntary must be based on a consideration of the totality of the circumstances surrounding it. *State* v. *DeForge,* supra, 397; *State* v. *Carter,* 189 Conn. 611, 622, 458 A.2d 369 (1983); *State* v. *Turcio,* 178 Conn. 116, 144, 422 A.2d 749 (1979), cert. denied, 444 U.S. 1013, 100 S. Ct. 661, 62 L. Ed. 2d 642 (1980); see *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 248–49, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). It is a factual determination. "The issue of whether a confession is volun-

tary and admissible is, in the first instance, one of fact for the determination by the trial court in the exercise of its legal discretion." *State* v. *Derrico,* 181 Conn. 151, 162, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980). That discretion must, however, be exercised by the trial court in accordance with constitutional standards of due process. *State* v. *Staples,* supra, 408. Though the question is ultimately factual, our usual deference to factfinding by the trial court is qualified on the question of voluntariness by the necessity for an independent and scrupulous examination of the entire record to ascertain whether the trial court's finding is supported by substantial evidence. *State* v. *Toste,* 198 Conn. 573, 576, 504 A.2d 1036 (1986); *State* v. *DeForge,* supra, 398.

Our examination of the record in this case reveals that there was evidence that Shackett urged the defendant to confess. In light of the totality of the circumstances surrounding the defendant's confession, however, her conduct fell far short of creating a situation where the defendant's will was overborne and his capacity for self-determination critically impaired. The setting was not coercive for someone of the defendant's background and experience, and while Shackett begged the defendant to confess in order to get help, the defendant testified that because of past experiences he did not trust the authorities. Therefore, Shackett, urging the defendant to confess in order to obtain "psychiatric assistance for his behavioral problem through the criminal justice system, could hardly have raised expectations of leniency on the part of the defendant, who had previous experience with the system." *State* v. *Carter,* supra, 639. Viewing the totality of the circumstances we cannot say that the defendant's free will was overborne. See *State* v. *Derrico,* supra, 165. On the basis of the record before us we conclude, therefore, that there was

ample evidence to meet the necessary standard of proof that the defendant's confession was voluntary.[3]

The defendant next claims that he invoked his right to counsel when, in the hearing range of Reinholtz, he asked to speak to Culligan. This claim also was not raised at trial. The defendant contends, however, that it too should be reviewed because the record adequately supports a claim that he was deprived of a fundamental constitutional right and a fair trial. *State* v. *Evans,* supra, 70. We agree that the claim is reviewable, but find no constitutional error.

The record reflects that approximately ten minutes after the defendant attempted to speak to Culligan, Shackett, who was seated in the cell area with the defendant, called Reinholtz in and told her that the defendant would talk to her. Reinholtz then asked the defendant if he did wish to speak to her and he answered in the affirmative. At that point Reinholtz read the defendant his *Miranda* warnings and waivers which he indicated he understood and he then immediately commenced a statement concerning his involvement in the sexual assault and robbery of the victim at the health foods store.

In *Edwards* v. *Arizona,* 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378, reh. denied, 452 U.S. 973, 101 S. Ct. 3128, 69 L. Ed. 2d 984 (1981), the United States Supreme Court held that an accused having once invoked his right to counsel "is not subject to further

---

[3] This case is distinguishable from *State* v. *Alexander,* 197 Conn. 180, 496 A.2d 486 (1985). There the trial court had found the defendant's confession was voluntary and the only relevant issues on appeal were whether the civilian who obtained incriminating statements from the defendant was acting as an agent of the police so as to violate the defendant's sixth amendment right to counsel under *Massiah* v. *United States,* 377 U.S. 201, 84 S. Ct. 1199, 12 L. Ed. 2d 246 (1964), or to require warnings under *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). See *State* v. *Alexander,* supra, 182–83.

interrogation by the authorities until counsel has been made available to him, *unless* the accused himself initiates further communication, exchanges, or conversation with the police." (Emphasis added.) Id., 484–85; *State* v. *Barrett,* 197 Conn. 50, 58, 495 A.2d 1044 (1985). Even if we assume, arguendo, that the defendant invoked his right to counsel we are nonetheless persuaded from the evidence that he initiated the communication with Reinholtz that resulted in his confession. We are also satisfied that the " 'particular facts and circumstances surrounding [this] case, including the background, experience and conduct of the accused'; *Johnson* v. *Zerbst,* 304 U.S. 458, 464 [58 S. Ct. 1019, 82 L. Ed. 1461] (1938)"; *Edwards* v. *Arizona,* supra, 482; support the trial court's finding that the defendant voluntarily and knowingly waived his right to counsel. An explicit or written waiver is not essential. *North Carolina* v. *Butler,* 441 U.S. 369, 375–76, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979); see *State* v. *Harris,* 188 Conn. 574, 580–81, 452 A.2d 634 (1982), cert. denied, 460 U.S. 1089, 103 S. Ct. 1785, 76 L. Ed. 2d 354 (1983). The defendant was not deprived of his fundamental right to counsel; he waived it.

The recently decided United States Supreme Court case of *Michigan* v. *Jackson,* 475 U.S. 625, 106 S. Ct. 1404, 89 L. Ed. 2d 631 (1986), does not require a different result. In that case, the court held that, *if the police initiate interrogation* after a defendant has asserted his right to counsel at an arraignment or similar proceeding, any waiver of the defendant's right to counsel is a violation of the sixth amendment and invalid. Id., 635. Initially it is doubtful whether *Jackson* applies to the facts of this case since the defendant's confession did not concern the crime for which he had been arraigned and counsel appointed. In discussing an alleged sixth amendment violation, a United States Circuit Court of Appeals stated: *"Massiah* [v. *United*

*States,* 377 U.S. 201, 84 S. Ct. 1199, 12 L. Ed. 2d 246 (1964),] offers no immunity from liability for uncounseled, post-indictment statements that involve different criminal acts. Such statements, even though deliberately elicited by government agents after indictment and in the absence of counsel, may form the basis for a separate indictment and may be offered to prove such additional charges." *United States* v. *Grego,* 724 F.2d 701, 703 (8th Cir. 1984); *State* v. *Biller,* 190 Conn. 594, 615, 462 A.2d 987 (1983). Further, we have indicated that the record reveals that the defendant and not the police initiated communication and the defendant thereafter waived his right to counsel.

Finally, the defendant claims that the trial court erred when it found that he understood and validly waived his right to remain silent and his right to counsel. The defendant concedes in his brief that the trial court found that he understood and waived his *Miranda* rights. He maintains, however, that the court's finding was clearly erroneous.

The state bore the burden of establishing, by a preponderance of the evidence, that the defendant's waiver was knowingly, intelligently and voluntarily made. *State* v. *Jones,* 193 Conn. 70, 83–84, 475 A.2d 1087 (1984). The knowing and voluntary nature of the defendant's waiver was essentially a question of fact to be determined by the trial court in view of the totality of the circumstances. Id., 84. " 'Although the issue is therefore ultimately factual, our usual deference to the fact-finding by the trial court is qualified, on questions of this nature, by the necessity for a scrupulous examination of the record to ascertain whether such a factual finding is supported by substantial evidence. . . .' *State* v. *Harris,* 188 Conn. 574, 579–80, 452 A.2d 634 (1982)." *State* v. *Pellegrino,* 194 Conn. 279, 288–89, 480 A.2d 537 (1984). On the basis of our review of the record we

cannot conclude that the trial court erred in finding that the defendant voluntarily and knowingly waived his right to remain silent and his right to counsel.

There is no error.

In this opinion the other justices concurred.