******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ESPINOSA, J., with whom ZARELLA, J., joins, concurring. I agree with the majority that the judgment of conviction of the defendant, Andrew Dickson, should be affirmed. Therefore, I concur in the result. I disagree, however, with the majority's decision to overrule *State* v. *Smith*, 200 Conn. 465, 512 A.2d 189 (1986), and *State* v. *Tatum*, 219 Conn. 721, 728, 595 A.2d 322 (1991). In my view, the majority's decision is yet another instance in which this court acts under the mistaken belief that justice is served when this court crafts a new legal rule in order to allow itself to step in and perform a function that is the proper province of the trial court. I therefore agree with and join the concurring opinion of Justice Zarella. I particularly note my agreement with him that the majority lacks authority to announce a prophylactic rule predicated on federal constitutional law. If any court has that authority—an issue I need not resolve as it is not implicated in this appeal—it is the United States Supreme Court. The majority's failure to offer any explanation for its authority to issue such a rule, even resisting the increasingly popular resort to this court's supervisory powers, highlights the fact that the majority lays claim to a power that is without any foundation. Compounding the error, the majority not only acts without authority, but in doing so it micromanages the trial courts—again.

In *Smith*, this court acknowledged that there is always an "element of suggestiveness" involved in an in-court identification procedure; *State* v. *Smith*, supra, 200 Conn. 469; because such a procedure "conveys the message that the state has arrested and placed on trial a person it believes has committed the crime." Id., 468–69. The court further recognized, however, that, unless the in-court identification had been preceded by an unnecessarily suggestive pretrial identification procedure that was " 'conducive to irreparable misidentification,' " the suggestiveness involved in an in-court identification does not implicate the due process clause. Id., 470. Accordingly, the court explained, because the "manner in which in-court identifications are conducted is not of constitutional magnitude," the admissibility of such identifications "rests within the sound discretion of the trial court." Id. Justice Zarella's concurring opinion thoroughly and cogently explains why the principles that this court relied on in *Smith* to conclude that in-court identifications do not violate a defendant's right to due process remain valid and controlling. Today, however, the majority departs from all other jurisdictions by adopting a prophylactic rule that applies to all first time in-court identifications. In doing so, the majority invades the province of the trial court.

The unwieldy nature of the majority's rule illustrates

that it attempts to perform a task more suited to the trial court. In order to make its general rule "fit" to the task, the majority tries to anticipate possible contingencies, constructing a rule that reads like a complicated flowchart. A brief summary of the general rule and all of its permutations is illustrative.

The general rule announced by the majority is that "in-court identifications that are not preceded by a successful identification in a nonsuggestive identification procedure . . . must be prescreened by the trial court." (Footnote omitted.) So, when there has been no pretrial identification, and the state intends to present a first time in-court identification, it must first ask permission from the trial court.

But what if the defendant is a person known to the witness? In that case, the majority explains, the state need only give notice to that effect on the record to satisfy the prescreening requirement.

What if the defendant fails to dispute or concedes the ability of the witness to identify him? The state must provide notice on the record of that fact to satisfy the prescreening requirement.

What if the defendant concedes that he performed the actions at issue, and only disputes that his actions constituted a crime? The state must provide notice on the record of such concession to satisfy the prescreening requirement.

If the trial court determines that the state may not perform a first time identification in court, then the state may request permission to perform an out-of-court identification procedure, and the court *ordinarily* should grant the state's request.

But what if the witness already has participated in a nonsuggestive identification procedure, and failed to identify the defendant? In order to be allowed to conduct a second identification procedure, the state must "provide a good reason" why the court should allow it. The majority acknowledges that it cannot "catalogue" all of the reasons that could justify a court's decision to allow a second identification procedure, but offers two examples: if the state already conducted a photographic array and now wishes to conduct a lineup, or when the witness was threatened or intimidated before the first identification procedure. See footnote 30 of the majority opinion.

If the witness did identify the defendant in a previous, nonsuggestive procedure, but with "some uncertainty," the majority states, due process generally does not require that the court prescreen the in-court identification. The level of uncertainty goes to the weight of the evidence, not its admissibility. If the uncertainty of the witness during the prior identification procedure was so great that it amounted to a failure to identify the defendant, however, the in-court identification proce-

dure would be subject to prescreening.

What if the witness learned that the defendant had been charged with a crime and the witness attended pretrial proceedings, thus observing the defendant? If the state was not responsible for the pretrial confrontation, then those facts go to the weight of the evidence, not its admissibility.

What if the state was responsible for the presence of the witness at the pretrial proceedings? In that case, the trial court must determine under the totality of the circumstances whether "the witness would have been able to identify the defendant in court even without the prior suggestive confrontation." If the answer is yes, then the in-court identification should be allowed. If the answer is no, then no in-court identification should be allowed.

The many alternatives that the majority attempts to anticipate in its rule reveal that it has taken upon itself a task for which this court is not suited. The supervision of procedures and the managing of evidence should be left to the sound discretion of the trial court. The defendant's protections against the suggestiveness of an in-court identification, as Justice Zarella explains in his concurring opinion, are the "traditional protections of our adversary system, such as confrontation, the attendant right to cross-examine state witnesses, closing argument, jury instructions, the presumption of innocence, and the government's burden to prove guilt beyond a reasonable doubt." The trial court, presiding over the proceedings, is in the best position to ensure that all of these traditional protections operate to ensure that the defendant receives a fair trial. The majority's effort to substitute its own broad rule for the myriad decisions that a trial judge must make as a case evolves is ill-adapted to the task at hand, as illustrated by the multiple contingencies that the majority attempts to anticipate.

What is more troubling than the poor fit of the majority's rule is that today's decision is part of an emerging pattern of judicial activism in this court. I have already noted this trend in a previous dissenting opinion, but because of the risk posed to the rule of law, the observation bears repeating. Today's decision is one among a disturbing line of cases in which this court has exceeded "the constitutional bounds of its power in order to impose its personal notion of what justice and fairness require." *State* v. *Santiago*, 318 Conn. 1, 389, 122 A.3d 1 (2015) (*Espinosa*, *J.*, dissenting). For instance, in recent decisions, this court also has strained beyond its own role: to usurp the role of the legislature in setting public policy for the state; see, e.g., id., 389 (*Espinosa*, *J.*, dissenting) (explaining that majority decision abolishing death penalty constituted "legislating from the bench" [emphasis omitted]); see also *State* v. *Peeler*, 321 Conn. 375, 377,    A.3d    (2016) (according stare

decisis effect to *State* v. *Santiago*, supra, 1); to cross the line from adjudication into advocacy; see, e.g., *Lapointe* v. *Commissioner of Correction*, 316 Conn. 225, 440, 112 A.3d 1 (2015) (*Espinosa, J.*, dissenting) (explaining that majority, by resolving appeal on basis that habeas petitioner expressly had abandoned, and by announcing radical new rule allowing for de novo review of habeas court's factual findings, effectively "doff[ed] [its] judicial robe and donn[ed] an advocate's suit"); and, in disregard of applicable standards of review, to substitute its own judgment, or in the most extreme case, its own findings, for that of the trial court. See, e.g., *In re Oreoluwa O.*, 321 Conn. 523, 547–48, A.3d (2016) (*Espinosa, J.*, dissenting) (detailing manner in which majority opinion ignored applicable standard of review of evidentiary sufficiency, and, rather than considering evidence in light most favorable to sustaining judgment of trial court, as required, instead drew inferences least likely to support judgment); *Lapointe* v. *Commissioner of Correction*, supra, 298 (applying de novo review of habeas court's credibility findings).

This line of recent decisions risks creating the perception that the court is not content to be confined by the rule of law to its role as a state, appellate tribunal, and instead is willing to appropriate authority that properly belongs to other courts or branches of government, to advocates rather than judges, or, in some instances, possibly to no one at all. For instance, in the present case, as Justice Zarella explains thoroughly in his concurring opinion, by announcing its prophylactic rule predicated on federal constitutional law, the majority purports to exercise authority that, *if enjoyed by any court at all*, belongs only to the United States Supreme Court. See *Ohio* v. *Robinette*, 519 U.S. 33, 43, 117 S. Ct. 417, 136 L. Ed. 2d 347 (1996) (Ginsburg, J., concurring). Moreover, as Justice Robinson observes in his concurring opinion, because the state has prevailed in this appeal, the majority's conclusion is "virtually unreviewable," unless the United States Supreme Court departs from its normal practice of denying petitions for certiorari filed by prevailing parties. As I have explained in this concurring opinion, the majority's rule also encroaches on the role of the trial court by attempting to supervise proceedings at that court by universal rule, rather than allowing the trial court to manage the proceedings in each case as they develop. Because I believe that this court best serves the rule of law and justice by recognizing the limits of its role and acting within those limits, I respectfully concur in the judgment.