******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# CALVIN BENNETT *v.* COMMISSIONER OF CORRECTION
## (AC 37131)

Lavine, Elgo and Beach, Js.

*Syllabus*

The petitioner, who had been convicted of the crimes of aiding and abetting murder, felony murder, home invasion and burglary in the first degree, sought a writ of habeas corpus, claiming that his trial counsel had rendered ineffective assistance by, inter alia, failing to adequately challenge the eyewitness testimony of B and C. At the habeas trial, the petitioner claimed, inter alia, that his trial counsel should have offered expert testimony on the issue of the reliability of eyewitness identification, and the petitioner presented the testimony of a legal expert, S, in support of that claim. The petitioner also offered into evidence as a full exhibit a copy of the transcript of certain expert testimony at a hearing, pursuant to *State* v. *Porter* (241 Conn. 57), in the trial of his codefendant, M, and the habeas court declined to admit the transcript into evidence as a full exhibit. The habeas court rendered judgment denying the habeas petition and, thereafter, denied the petition for certification to appeal, and the petitioner appealed to this court. *Held*:

1. The habeas court did not abuse its discretion in denying the petition for certification to appeal with respect to the petitioner's claims that the court improperly declined to admit as a full exhibit the transcript of the expert testimony presented at M's criminal trial and that his trial counsel performed deficiently by inadequately challenging eyewitness testimony, the petitioner having failed to demonstrate that the issues he raised were debatable among jurists of reason, or that a court could have resolved them in a different manner.

2. The habeas court did not abuse its discretion in declining to admit the transcript of the expert testimony from M's criminal trial into evidence as a full exhibit, which the petitioner claimed was admissible for the purpose of showing the basis for S's expert opinions: although, in certain circumstances, the information that an expert witness relied on may be admissible for the purpose of showing the basis for the opinions of that expert, there was no requirement that such documents be admitted as a full exhibit, as the facts contained therein were hearsay, and the record showed that S testified at length about the developments in the law regarding eyewitness identification, about the opinions expressed by the expert in M's criminal trial, and about studies underlying the changes in the law; moreover, the habeas court did not err by not taking judicial notice of the transcript, as the opinions expressed by the expert witness in M's criminal trial were not the sort of uncontested facts contemplated by the concept of judicial notice, and the court acted within its discretion under the applicable provision (§ 2-1) of the Connecticut Code of Evidence, and the petitioner's unpreserved claim that the habeas court should have admitted the transcript as a full exhibit pursuant to the residual exception to the hearsay rule was not reviewable, the petitioner having failed to raise the claim before the habeas court.

3. The petitioner could not prevail on his claim that the habeas court erred in concluding on the merits that his right to the effective assistance of counsel was not violated: that court did not err in its conclusion that the petitioner's trial counsel did not perform deficiently by not moving to suppress B's in-court identification of the petitioner, as trial counsel's performance had to be considered in light of the legal standards in effect at the time of the petitioner's criminal trial, which allowed for the exclusion of an in-court identification only when it was tainted by an unnecessarily suggestive and unreliable out-of-court identification, and provided that, in all other circumstances, as here, a defendant's protection against the obvious suggestiveness in any courtroom confrontation was his right to cross-examination, which trial counsel here performed effectively; moreover, there was no merit to the petitioner's claim that his trial counsel performed deficiently by not presenting an expert on the issue of eyewitness identification, as the controlling law

at the time of the petitioner's criminal trial discouraged the use of expert testimony on that issue and it was, thus, reasonable for trial counsel to use cross-examination to attack the weight of the testimony of B and C, and the petitioner's claim that his trial counsel performed deficiently by not emphasizing, in the course of cross-examination, certain factors identified as important by our Supreme Court in evaluating the reliability of an eyewitness identification was unavailing, as trial counsel's performance could not be evaluated according to standards enunciated by our Supreme Court three years after the criminal trial.

Argued December 11, 2017—officially released June 12, 2018

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Fuger, J.*; judgment denying the petition; thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to this court. *Appeal dismissed.*

*Michael W. Brown*, assigned counsel, for the appellant (petitioner).

*Michele C. Lukban*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Marc G. Ramia*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

BEACH, J. The petitioner, Calvin Bennett, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court (1) abused its discretion in denying his petition for certification to appeal, (2) abused its discretion in declining to admit into evidence a transcript from the criminal trial of another defendant, and (3) erred in finding that his right to the effective assistance of counsel at his criminal trial had not been violated. We disagree and, accordingly, dismiss the appeal.

Our Supreme Court, in the petitioner's direct appeal, recited the following facts, as found by the three judge trial court. "[The victim] James Caffrey lived in the second floor apartment of 323 Hill Street in Waterbury with his girlfriend Samantha Bright and one other roommate. [The victim's] mother, Emilia Caffrey, lived in the first floor apartment. In the late afternoon of Saturday, October 26, 2008, [the victim] and Bright had five visitors, including [the codefendant] Tamarius Maner, in their living room. Maner had a clear view of the bedroom from where he was seated in the living room. Maner purchased a small amount of marijuana from [the victim] and paid him some money, which [the victim] put in the bedroom. [The victim] kept the marijuana in the bedroom. [The victim] remarked that he had saved $500 for a child that he was expecting with Bright.

"At about that time, Maner and the [petitioner] lived next door to each other in Bridgeport and had done drug business together. Maner contacted the [petitioner] by cell phone during the evening of Saturday, October 26. Shortly after midnight on Sunday, October 27, Maner and the [petitioner] drove from Bridgeport to Waterbury to go to [the victim's] apartment. They were carrying loaded handguns.

"Just after 1 a.m., the doorbell to the second floor apartment at 323 Hill Street rang and [the victim] answered the door. A conversation of a few seconds with . . . [the victim] ensued. Maner then shot [the victim] in the face from a distance of one to three feet with a .45 caliber handgun. [The victim] fell in the hallway in a pool of blood and died from the gunshot wound to the head.

"Maner and the [petitioner] walked past [the victim] and into a bedroom. There the [petitioner] put a gun to Bright's head and asked: Where is everything? Bright understood the question to inquire about money and drugs. Bright referred them to the top dresser drawer. Maner opened it and threw its contents on the bedroom floor.

"At about that time, they heard the screams of Emilia Caffrey, who had heard the shot and discovered her

son lying in the second floor hallway. The [petitioner] told Bright to keep her head down and face toward the wall. Maner and the [petitioner] then ran into the kitchen, which Emilia Caffrey had also entered in order to call 911. Maner, who was standing at the stove, fired one shot at [Emilia] Caffrey and missed. The [petitioner] was standing at the window.

"Maner and the [petitioner] then ran out of the kitchen, pushing [Emilia] Caffrey to the floor as they left. They returned to their car and arrived back in Bridgeport around 2 a.m.

"Police interviews of some of the Waterbury visitors to [the victim's] apartment on the afternoon of October 26 led to the identity of Maner . . . . Further police investigation, including analysis of Maner's cell phone calls, brought police to an apartment in Bridgeport where they found the [petitioner]. The [petitioner] voluntarily returned to Waterbury with the police and told them that he had not left Bridgeport on the night in question. When confronted with the fact that his cell phone records showed him in Waterbury during the time of the crimes, the [petitioner] put his head down for a minute and then indicated that he had nothing more to say. A search, pursuant to a warrant, of his apartment in Bridgeport revealed a suitcase containing the [petitioner's] clothes, a loaded .45 caliber pistol, and a sock containing sixty-one rounds of ammunition." (Internal quotation marks omitted.) *State* v. *Bennett*, 307 Conn. 758, 761–63, 59 A.3d 221 (2013).

Our Supreme Court noted that the petitioner "was charged with aiding and abetting murder in violation of General Statutes §§ 53a-8 and 53a-54a, felony murder in violation of General Statutes § 53a-54c, home invasion in violation of General Statutes § 53a-100aa (a) (1), and burglary in the first degree in violation of General Statutes § 53a-101 (a) (3). The [petitioner] elected a trial to a three judge court . . . . The panel, consisting of *Cremins*, *Crawford* and *Schuman*, *Js.*, rendered a unanimous verdict of guilty on all of the charges except aiding and abetting murder, on which a majority of the panel found the [petitioner] guilty, and thereafter rendered judgment in accordance with the verdict and imposed a total effective sentence of sixty years imprisonment. . . . [T]he [petitioner] directly appealed from the judgment of conviction to [our Supreme Court]. On appeal, the [petitioner] contend[ed]: (1) that there was insufficient evidence to convict him of aiding and abetting murder; and (2) that he did not knowingly waive his right to a jury trial." (Citation omitted.) Id., 760–61. Our Supreme Court reversed the judgment as to the petitioner's first claim but affirmed it in all other respects. Id., 777.

In his amended petition for a writ of habeas corpus, filed February 4, 2014, the petitioner claimed that his trial counsel, Lawrence Hopkins, rendered ineffective

assistance by, among other things, failing adequately to challenge the eyewitness testimony of Bright and Emilia Caffrey. The habeas court denied the petition for a writ of habeas corpus and a subsequent petition for certification to appeal from the court's judgment. This appeal followed. Additional facts will be discussed as necessary.

I

The petitioner claims that the habeas court erred in denying his petition for certification to appeal from the denial of his habeas petition. Specifically, he argues that because the issues are debatable among jurists of reason and a court could have resolved the issues differently, the habeas court abused its discretion in denying his petition for certification to appeal.

"Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, [the petitioner] must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on the merits. . . . To prove that the denial of his petition for certification to appeal constituted an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . .

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by [our Supreme Court] for determining the propriety of the habeas court's denial of the petition for certification." (Citations omitted; internal quotation marks omitted.) *Sanders* v. *Commissioner of Correction*, 169 Conn. App. 813, 821–22, 153 A.3d 8 (2016), cert. denied, 325 Conn. 904, 156 A.3d 536 (2017).

As we discuss more fully in parts II and III of this opinion, we disagree with the petitioner's claims that the habeas court abused its discretion in declining to admit as a full exhibit a transcript of expert testimony

presented at Maner's criminal trial and that Hopkins performed deficiently in inadequately challenging eyewitness testimony. Because the resolution of the petitioner's claims does not involve an issue that is debatable among jurists of reason and a court could not reasonably have resolved the issues differently, we conclude that the habeas court did not abuse its discretion in denying certification to appeal from the denial of the petition for a writ of habeas corpus.

## II

We turn to the question of whether the habeas court abused its discretion in refusing to admit as a full exhibit a transcript of expert testimony from Maner's criminal trial. The petitioner argues that the transcript was relevant evidence in support of his claim that Hopkins rendered ineffective assistance by failing to present at the criminal trial an expert witness on the issue of the reliability of eyewitness identification. We conclude that the habeas court did not abuse its discretion in its evidentiary ruling.

We first set forth our standard of review. "To the extent [that] a trial court's admission of evidence is based on an interpretation of [our law of evidence], our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. . . . We review the trial court's decision to admit [or exclude] evidence, if premised on a correct view of the law, however, for an abuse of discretion. . . . The trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. . . . Thus, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling[s] [on these bases] . . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court . . . reasonably [could have] conclude[d] as it did." (Internal quotation marks omitted.) *Weaver* v. *McKnight*, 313 Conn. 393, 426, 97 A.3d 920 (2014).

"[A]n out-of-court statement offered to establish the truth of the matter asserted is hearsay. . . . As a general rule, such hearsay statements are inadmissible unless they fall within a recognized exception to the hearsay rule. . . . A hearsay statement that does not fall within one of the traditional exceptions to the hearsay rule nevertheless may be admissible under the residual exception to the hearsay rule provided that the proponent's use of the statement is reasonably necessary and the statement itself is supported by equivalent guarantees of trustworthiness and reliability that are essential to other evidence admitted under traditional exceptions to the hearsay rule. . . .

"Reasonable necessity may be established by show-

ing that unless the hearsay statement is admitted, the facts it contains may be lost, either because the declarant is dead or otherwise unavailable, or because the assertion is of such a nature that evidence of the same value cannot be obtained from the same or other sources." (Citations omitted; internal quotation marks omitted.) *Corbett* v. *Commissioner of Correction*, 133 Conn. App. 310, 319–20, 34 A.3d 1046 (2012).

The following additional facts, which appear in the record, are relevant. At his habeas trial, the petitioner claimed that Hopkins should have offered expert testimony on the issue of the reliability of eyewitness identification. The petitioner presented a legal expert, Lisa Steele, who testified comprehensively. Although she was qualified as a legal expert, the habeas court did not find Steele to be qualified as an expert in the science of eyewitness identification. Steele then testified that she had reviewed all of the transcripts and briefs in the cases of both the petitioner and Maner;[1] she had also reviewed the witness statements by Bright and Emilia Caffrey. Steele opined that Hopkins could have applied *State* v. *Ledbetter*, 275 Conn. 534, 881 A.2d 290 (2005), cert. denied, 547 U.S. 1082, 126 S. Ct. 1798, 164 L. Ed. 2d 537 (2006), and *State* v. *Marquez*, 291 Conn. 122, 967 A.2d 56, cert. denied, 558 U.S. 895, 130 S. Ct. 237, 175 L. Ed. 2d 163 (2009), to highlight weaknesses in the identification procedures used in the present case to identify the petitioner as a perpetrator. Specifically, the police had used nonblind simultaneous photographic arrays, and the officer conducting the process knew the identities of the suspects. Steele opined that Hopkins should have forcefully highlighted the effects of stress, lighting, and the threatened use of weapons on the reliability of eyewitness identification through cross-examination and by using an expert in the field of eyewitness identification.

Steele contrasted the petitioner's criminal case to that of Maner, in which the expert testimony of Steven Penrod, a psychologist, was presented. She noted that Penrod had testified about the subconscious influences that officers exert in the presentation of photographic arrays to witnesses when the officers are aware of a suspect's identity. She said that an expert such as Penrod would have been effective in educating the three judge court about factors such as the effect of stress on eyewitness identification. On cross-examination, the respondent, the Commissioner of Correction, elicited from Steele the information that Maner was convicted despite the use of Penrod at his trial.

During Steele's testimony, the petitioner offered into evidence as a full exhibit his exhibit 19 for identification, which was a copy of the transcript of the *Porter*[2] hearing in Maner's trial on the issue of Penrod's qualifications as an expert. Steele had reviewed the transcript prior to her testimony, and from it she gleaned informa-

tion regarding the science of eyewitness identification as it related to Maner's trial. The respondent objected to its introduction as a full exhibit, apparently on relevancy grounds, because the testimony took place in the trial of a different defendant and the trial took place approximately one year after the petitioner's criminal trial. The habeas court and the petitioner's counsel then engaged in the following colloquy:

"The Court: [W]hat's the purpose you're seeking to introduce this for?

"[The Petitioner's Counsel]: Your Honor, I seek to submit it as a full exhibit for the purpose of the information that . . . Steele reviewed and the basis of formulating her opinions or the opinions that she will be formulating in this particular trial.

"The Court: Not for the truth contained within?

"[The Petitioner's Counsel]: Not as far as what happened to . . . Maner's trial or anything like that. Basically, just the information regarding the science of witness identification.

"The Court: Well, there, I assume, is testimony by . . . Penrod?

"[The Petitioner's Counsel]: Correct.

"The Court: And are you seeking to have me accept that as for the truth contained in that testimony?

"[The Petitioner's Counsel]: For that limited purpose, yes, Your Honor.

"The Court: How's that not hearsay?

"[The Petitioner's Counsel]: Well, I believe Your Honor can take judicial notice [of] the particular transcript. If nothing else, it was a part of . . . Maner's appeal and that part of his appellate record.

"The Court: What do I care about . . . Maner's [appeal]? I mean . . . this case involves [the petitioner].

"[The Petitioner's Counsel]: I understand that, but . . . Maner was [the petitioner's] codefendant . . . . I submit to the court that the information contained therein is relevant to [the petitioner] as far as the eyewitness identification is concerned, and the . . . availability of the information that . . . Hopkins had and failed to utilize at the time of [the petitioner's] trial.

"The Court: Objection's sustained."

The record reveals, then, that the rationale advanced for admission as a full exhibit was somewhat scattered. The petitioner first suggested that the exhibit was admissible for the purpose of showing a basis for Steele's opinions. Although, in some circumstances, such information may be admissible for that limited purpose,[3] there is no requirement that such documents

be admitted as full exhibits, because the "facts" contained therein are hearsay nonetheless. See, e.g., *Tadros* v. *Tripodi*, 87 Conn. App. 321, 329, 866 A.2d 610 (2005) ("[t]he court was well within its discretion to allow [the witness] to *testify* as to the bases of his expert opinion, regardless of whether the documentation on which he relied was itself admissible" [emphasis added]). The record reveals that Steele testified at considerable length about the developments in the law regarding eyewitness identification, including *Ledbetter* and *State* v. *Guilbert*, 306 Conn. 218, 49 A.3d 705 (2012),[4] she testified about the opinions which Penrod had expressed during the *Porter* hearing in Maner's criminal trial; and the petitioner agreed in his brief that Steele testified about the studies underlying the changes in the law. The court did not abuse its discretion in declining to admit the transcript as a full exhibit on the basis of it having been used in the formulation of Steele's expert opinions.

The petitioner also argues that the court erred by not taking judicial notice of the transcript, because it was a document created in the course of another judicial proceeding. Section 2-1 of the Connecticut Code of Evidence states in relevant part that "[a] court may, but is not required to, take notice of matters of fact, in accordance with subsection (c)," which provides that a "judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) within the knowledge of people generally in the ordinary course of human experience, or (2) generally accepted as true and capable of ready and unquestionable demonstration." The opinions expressed by Penrod were simply not the sort of uncontested facts contemplated by the concept of judicial notice. See, e.g., *State* v. *Guilbert*, supra, 306 Conn. 230 (admissibility of expert testimony dependent on whether witness offered as expert has any peculiar knowledge or experience, not common to world, which aids fact finder); see also *State* v. *Porter*, 241 Conn. 57, 84–85, 698 A.2d 739 (1997), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998). In any event, the rule on its face grants discretion to the court, and the court did not abuse its discretion, especially in light of Steele's testimony on the same topic.

The petitioner argues on appeal that the court should have admitted the transcript as a full exhibit pursuant to the residual exception to the hearsay rule. This reasoning was not advanced to the habeas court and, thus, was not preserved for review. "An appellant who challenges on appeal a trial court's exclusion of evidence is limited to the theory of admissibility that was raised before and ruled upon by the trial court. A court cannot be said to have refused improperly to admit evidence during a trial if the specific grounds for admission on which the proponent relies never were presented to the court when the evidence was offered. . . . Error does

not lie in the exclusion of evidence claimed on an inadmissible ground even though it might have been admissible had it been claimed on another and different ground [at trial]. . . . A contrary policy would allow trial court proceedings to become a Kafkaesque academic test which [the trial judge] may be determined to have failed because of questions never asked of him or issues never clearly presented to him." (Citations omitted; internal quotation marks omitted.) *State* v. *Polynice*, 164 Conn. App. 390, 401, 133 A.3d 952, cert. denied, 321 Conn. 914, 136 A.3d 1274 (2016). We, therefore, decline to review the claim that the transcript should have been admitted on the basis of the residual exception to the hearsay rule.[5]

Finally, Steele testified about the many resources available to Hopkins at the time of the petitioner's criminal trial, including the science that was beginning to be accepted in the law. We do not see what value the transcript would have added to the habeas court's analysis. The habeas court did not abuse its discretion in declining to admit exhibit 19 into evidence as a full exhibit.

### III

The petitioner also claims that the habeas court erred in concluding on the merits that the petitioner's right to the effective assistance of counsel was not violated. The petitioner argues that Hopkins performed deficiently by inadequately challenging the eyewitness testimony of Bright and Emilia Caffrey. Specifically, he argues that Hopkins should have moved to suppress the identification made by Bright and should have more effectively challenged the testimony of Bright and Emilia Caffrey. We disagree.

We begin with the standard of review applicable to this claim. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. . . . Accordingly, [t]he habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review. . . .

"A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . As enunciated in *Strickland* v. *Washington*, [466 U.S. 668, 686, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], [our Supreme Court] has stated: It is axiomatic that the right to counsel is

the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. . . . The claim will succeed only if both prongs are satisfied. . . .

"To prove his or her entitlement to relief pursuant to *Strickland*, a petitioner must first satisfy what the courts refer to as the performance prong; this requires that the petitioner demonstrate that his or her counsel's assistance was, in fact, ineffective in that counsel's performance was deficient. To establish that there was deficient performance by the petitioner's counsel, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. . . . A reviewing court must view counsel's conduct with a strong presumption that it falls within the wide range of reasonable professional assistance. . . . The range of competence demanded is reasonably competent, or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . .

"[J]udicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . In reconstructing the circumstances, a reviewing court is required not simply to give [the trial attorney] the benefit of the doubt . . . but to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as [he] did . . . ." (Citations omitted; internal quotation marks omitted.) *Spearman* v. *Commissioner of Correction*, 164 Conn. App. 530, 537–39, 138 A.3d 378, cert. denied, 321 Conn. 923, 138 A.3d 284 (2016).

The following additional facts are relevant. At the habeas trial, Hopkins testified that he hired an investigator to interview witnesses but did not use the results of that investigation in the petitioner's defense. Hopkins testified to knowing that Bright and Emilia Caffrey were shown photographic arrays, which included a photograph of the petitioner two days after the shooting, and that Bright had not been able to identify the petitioner at that time. Bright later identified the petitioner at a probable cause hearing and at trial. Hopkins also testified that he had reviewed Bright's statement to police, in which she said that she did not get a good look at either of the two intruders. Hopkins said he "never pursued a motion to suppress [Bright's in-court identifi-

cations] . . . because, really, we used all of that background . . . for purposes of cross-examination, both in the probable cause hearing and at trial, and made a big issue out of it in front of . . . the three judge panel."

The habeas court then engaged in the following discussion with the petitioner's counsel.

"The Court: [Counsel], may I ask you a question?

"[The Petitioner's Counsel]: Yes, Your Honor.

"The Court: [Bright] did not identify [the petitioner]. Correct?

"[The Petitioner's Counsel]: Correct.

"The Court: What . . . is there to suppress?

"[The Petitioner's Counsel]: The in-court identification, Your Honor.

"The Court: That's her testimony.

"[The Petitioner's Counsel]: Well, it was. It wasn't. But it was also an identification that was made in court—

"The Court: Well, I understand.

"[The Petitioner's Counsel]: —when asked.

"The Court: But she's there. She's under oath.

"[The Petitioner's Counsel]: Correct.

"The Court: She's subject to cross-examination. . . . [W]here is anything to be suppressed?

"[The Petitioner's Counsel]: I claim that a motion still could have been done, argued. I'll move off this subject and I'll—

"The Court: I'm not telling you to move off. I'm just asking you: where is the evidence that was subject to a potential motion for suppression?

"[The Petitioner's Counsel]: Well, it would have been the in-court identification. You could have moved to suppress that. You could have also addressed it through cross-examination.

"The Court: Didn't [Hopkins] just say he did that?

"[The Petitioner's Counsel]: Correct. I'm just clarifying things, Your Honor.

"The Court: So, what motion was [Hopkins] to have filed pretrial before [Bright] made an identification in court?

"[The Petitioner's Counsel]: It would have been a motion to suppress, but he did not do that.

"The Court: There was nothing to suppress.

"[The Petitioner's Counsel]: And I—

"The Court: Was there?

"[The Petitioner's Counsel]: —understand that, Your

Honor. That is correct, Your Honor. . . . Your Honor's correct. I'll withdraw that line of questioning. I won't proceed further on that."

The petitioner's counsel then asked Hopkins if he sought to suppress Emilia Caffrey's identification of the petitioner. Hopkins responded that he did not, stating: "I just didn't feel that there were any reasonable grounds upon which to base such a motion."

In its memorandum of decision, the habeas court stated the following: "The petition . . . attempts to take . . . Hopkins to task for failing to adequately address a suppression motion as to the pretrial eyewitness identification of the petitioner by . . . Bright. What emerged loud and clear from the testimony that was received in this case is that there really were not any grounds upon which the evidence could be suppressed at trial. The petitioner's own legal expert also made it abundantly clear in her testimony that it was her opinion that there was no basis upon which the evidence could be prevented from being presented to the three judge panel. So, there is nothing in . . . Hopkins' trial representation on this point that merits habeas relief. . . .

"At the outset of this discussion, it is clear that . . . Hopkins did an outstanding job of cross-examining both of the eyewitnesses on their identifications. The transcripts reveal it to be a vigorous and thorough job. All of the facts that were necessary to undermine the credibility and reliability of those identifications of the petitioner were elucidated on [cross-examination]. In fact, the petitioner's own legal expert conceded as much in her testimony."

The petitioner claims that pursuant to the principles stated in *State* v. *Dickson*, 322 Conn. 410, 141 A.3d 810 (2016), cert. denied,    U.S.    , 137 S. Ct. 2263, 198 L. Ed. 2d 713 (2017), decided approximately two years after the decision of the habeas court in the present case, Hopkins should have moved to suppress Bright's identification of the petitioner because she had been unable to identify the petitioner from a photographic array several days after the shooting, but later made in-court identifications. At the probable cause hearing, Bright testified that she first recognized the petitioner when he had appeared in court after his arrest.

In *Dickson*, our Supreme Court concluded "that first time in-court identifications, like in-court identifications that are tainted by an unduly suggestive out-of-court identification, implicate due process protections and must be prescreened by the trial court." Id., 426. The court specifically described the state of the law prior to its decision in *Dickson*: an in-court identification was subject to exclusion only when tainted by an unnecessarily suggestive and unreliable out-of-court identification; otherwise, an in-court identification was

subject only to cross-examination. Id., 422–23. The court further stated that its holding regarding pre-screening was to apply only to future cases and pending related cases, and was not to be applied retroactively in habeas actions. Id., 450–51 and 451 n.34.

At the time of the petitioner's criminal trial, the controlling law was *State* v. *Smith*, 200 Conn. 465, 512 A.2d 189 (1986), overruled in part by *State* v. *Dickson*, 322 Conn. 410, 141 A.3d 810 (2016), cert. denied,    U.S.    , 137 S. Ct. 2263, 198 L. Ed. 2d 713 (2017). In *Smith*, our Supreme Court stated that it knew "of no authority which would prohibit, as unduly suggestive, an exclusively in-court identification. . . . The defendant's protection against the obvious suggestiveness in any courtroom confrontation is his right to cross-examination. . . . The innate weakness in any in-court testimonial identification is grounds for assailing its weight rather than its admissibility." (Citations omitted; internal quotation marks omitted.) Id., 470.

We of course consider Hopkins' performance in light of standards in effect at the time of the petitioner's criminal trial. "Counsel . . . performs effectively when he elects to maneuver within the existing law . . . ." (Internal quotation marks omitted.) *Ledbetter* v. *Commissioner of Correction*, 275 Conn. 451, 462, 880 A.2d 160 (2005), cert. denied sub nom. *Ledbetter* v. *Lantz*, 546 U.S. 1187, 126 S. Ct. 1368, 164 L. Ed. 2d 77 (2006). At the time of the petitioner's criminal trial, there was no legal ground for suppression, and Hopkins cross-examined effectively. The habeas court did not err in its conclusion that Hopkins did not perform deficiently by not moving to suppress Bright's identification.

The petitioner also argues that Hopkins did not adequately attack the identifications made by Bright and Emilia Caffrey. The petitioner specifically points to factors such as lighting, the short duration of the incident, and stress experienced by the witnesses at the time they saw the perpetrators, which, he now claims, should have been more forcefully developed. He also posits that the identifications were cross-racial and, as such, would have affected the reliability of the identifications. The petitioner argues that Hopkins should have used an expert and should have stressed more applicable case law.

There is no merit to the claim that Hopkins performed deficiently by not presenting an expert on the issue of eyewitness identification. At the time of the petitioner's criminal trial, the controlling law on the issue was *State* v. *Kemp*, 199 Conn. 473, 507 A.2d 1387 (1986), overruled in part by *State* v. *Guilbert*, 306 Conn. 218, 49 A.3d 705 (2012), in which our Supreme Court observed "that the reliability of eyewitness identification is within the knowledge of jurors and expert testimony generally would not assist them in determining the question. . . . Such testimony is also disfavored because . . . it

invades the province of the jury to determine what weight or effect it wishes to give to eyewitness testimony." (Citation omitted; internal quotation marks omitted.) Id., 477.

Three years after the petitioner's criminal trial, our Supreme Court decided *Guilbert*, which overruled *Kemp*. The court concluded that *Kemp* was "out of step with the widespread judicial recognition that eyewitness identifications are potentially unreliable in a variety of ways unknown to the average juror." *State* v. *Guilbert*, supra, 306 Conn. 234. The court also observed that cross-examination "often is not as effective as expert testimony at identifying the weaknesses of eyewitness identification testimony because cross-examination is far better at exposing lies than at countering sincere but mistaken beliefs." Id., 243. The court noted that "some circumstances undoubtedly call for more than mere cross-examination of the eyewitness." (Internal quotation marks omitted.) Id., 244.

Again, because the law in effect at the time of the criminal trial discouraged the use of expert testimony on the issue of eyewitness identification, Hopkins did not perform deficiently by not presenting expert testimony. It was reasonable for Hopkins to use cross-examination to attack the weight of the testimony of Bright and Emilia Caffrey. Therefore, the habeas court did not err in failing to find deficient performance pertaining to this claim.

Finally, the petitioner claims that Hopkins performed deficiently by not stressing in the course of cross-examination, even if an expert were not called to testify, several factors identified as important in *Guilbert*. Performance of counsel is not to be evaluated according to standards enunciated three years after the criminal trial. For example, in *State* v. *Marquez*, supra, 291 Conn. 164–65, our Supreme Court had held that a nonblind photographic array was not unnecessarily suggestive. We have reviewed the record of the cross-examinations[6] and we conclude that the habeas court did not err in finding the performance adequate.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] Maner, a coparticipant in the petitioner's criminal activity, was tried separately from, and after, the petitioner. The transcripts of Maner's trial were available to the petitioner at his habeas trial.

[2] See *State* v. *Porter*, 241 Conn. 57, 80–90, 698 A.2d 739 (1997), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998).

[3] Section 7-4 (b) of the Connecticut Code of Evidence provides: "The facts in the particular case upon which an expert bases an opinion may be those perceived by or made known to the expert at or before the proceeding. The facts need not be admissible in evidence if of a type customarily relied on by experts in the particular field in forming opinions on the subject. *The facts relied on pursuant to this subsection are not substantive evidence, unless otherwise admissible as such evidence*." (Emphasis added.)

[4] Steele was appellate counsel for the defendant in both *Ledbetter* and *Guilbert*.

[5] We note that, although a court may take judicial notice of a file in another case; see, e.g., *State* v. *Bunkley*, 202 Conn. 629, 648, 522 A.2d 795 (1987);

the specific evidence sought to be admitted is subject to ordinary evidential standards, such as relevance and hearsay. *State* v. *Speers*, 17 Conn. App. 587, 601–602, 554 A.2d 769, cert. denied, 211 Conn. 808, 559 A.2d 1142, cert. denied, 493 U.S. 851, 110 S. Ct. 150, 107 L. Ed. 2d 108, cert. denied sub nom. *George* v. *Connecticut*, 493 U.S. 893, 110 S. Ct. 241, 107 L. Ed. 2d 192 (1989). Such evidence may well be admissible to show that information or documentation exists, as opposed to the truth of the information or documentation. See, e.g., *Heritage Village Master Assn., Inc.* v. *Heritage Village Water Co.*, 30 Conn. App. 693, 701, 622 A.2d 578 (1993); see also C. Tait & E. Prescott, Connecticut Evidence (5th Ed. 2014) § 2.16.5, p. 125. In the present case, there was no dispute that the information existed.

[6] During Hopkins' cross-examination of Bright, he stressed, among other things, her inability to give to the police an accurate description of the intruders due to lighting issues, inconsistencies between her initial statement to the police and testimony at trial, her not looking at the intruders because she was told to look away, the short duration of the incident, and her inability to pick the petitioner from a photographic array shortly after the shooting.

During Hopkins' cross-examination of Emilia Caffrey, he asked her, among other things, about her statement to the police in which she stated that she did not get a good look at one of the two intruders, presumably the petitioner, her being startled because she was fired upon, the short duration of the incident, and her hesitancy in selecting the petitioner from a photographic array.

———————————————